AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
## for the
### Southern District of California

FILED

MAY 14 2019

CLERK US DIST~~~ ~~~~~
SOUTHERN DIST~~~~ OF CA~~~~~~~~
BY _____ ~UTY

In the Matter of the Search of

*(Briefly describe the property to be searched
or identify the person by name and address)*

T-Mobile Regarding Phone Number 52-664-364-7734,
TMSI 337CFF42, and IMSI 334020390173102

)
)
)
)
)
)
)

Case No.

**19MJ1980**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A, incorporated herein.

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B, incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. 952, 960 | Importation of Controlled Substances |

The application is based on these facts:
See Attached Affidavit of HSI Spcial Agent David Marshall

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

David Marshall, Special Agent
_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  5/14/19

_____
*Judge's signature*

City and state:  San Diego, CA

Hon. Michael S. Berg, United States Magistrate Judge
_____
*Printed name and title*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## ATTACHMENT A

### *Item to be Searched*

This warrant applies to records and information associated with phone number 52-664-364-7734, the TMSI  337CFF42, and the IMSI number 334020390173102 ("the Account"), that are stored at premises controlled by T-Mobile ("the Provider"), headquartered at 4 Sylvan Way, Parsippany, New Jersey 07504.

1

2

## ATTACHMENT B

### *Items to be Seized*

3     The officer executing the warrant shall permit T-Mobile, as custodian of the

4  computer files described in Section I below, to locate the files and copy them onto

5  removable electronic storage media and deliver the same to the officer.

6  **I.     Items to be provided by the Provider**

7         The following information about the customers or subscribers of the Account:

8           i.  Names (including subscriber names, user names, and screen names);

9          ii.  Addresses (including mailing addresses, residential addresses, business

10               addresses, and e-mail addresses);

11         iii.  Local and long distance telephone connection records;

12         iv.  Records of session times and durations, and the temporarily assigned

13               network addresses (such as Internet Protocol ("IP") addresses)

14               associated with those sessions;

15          v.  Length of service (including start date) and types of service utilized;

16         vi.  Telephone or instrument numbers (including MAC addresses,

17               Electronic Serial Numbers ("ESN"), Mobile Electronic Identity

18               Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile

19               Identification Number ("MIN"), Subscriber Identity Modules ("SIM"),

20               Mobile Subscriber Integrated Services Digital Network Number

21               ("MSISDN"); International Mobile Subscriber Identity Identifiers

22               ("IMSI"), or International Mobile Equipment Identities ("IMEI"); and

23        vii.  Other subscriber numbers or identities (including the registration

24               Internet Protocol ("IP") address); and

25        b.  All records and other information (not including the contents of

26              communications) relating to wire and electronic communications sent or

27              received by the Account, including:

28

2

i.  the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses);

ii.  Cell site locations and sectors for all outgoing and incoming voice, SMS, MMS, and Data transactions;

iii.  All available Timing Advance Reports, currently known as True Call, to include cell site, sector, and distance from tower, IP session and Data;

iv.  T-Mobile & Metro by T-Mobile, Mediation Records, E9-1-1, and/or Historical GPS/Mobile Locate Information which shows GPS location (longitude and latitude) and Cell-Site and sector of the device in relationship to the network when connected to the network;

v.  List of all cell-sites, as of January 2019, for all state(s) in which the above records used cell locations.  Cell site lists to include switch, cell-site number, name, physical address, longitude and latitude, all sectors associated with each cell-site, azimuth, and beam-width of each related sector; and

vi.  All available Mobile Data Session and IPv6 reports.

## II.  Information to be Seized by the Government

All information described in Section I that constitutes evidence, fruits, and instrumentalities of violations of 21 U.S.C. §§ 952 and 960 and involving Engelber MARTINEZ-Avila during the period of October 9, 2018 up to and including January 9, 2019.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under

1   government control) are authorized to review the records produced by the Provider in order

2   to locate the things particularly described in this Warrant.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT**

2      I, Special Agent David Marshall, having been duly sworn, do hereby state the

3  following is true and correct to my knowledge and belief.

4                          **INTRODUCTION**

5      1.    I make this affidavit in support of an application for information associated

6  with the phone number 52-664-364-7734, with the Temporary Mobile Subscriber Identity

7  ("TMSI") number 337CFF42, with the International Mobile Subscriber Identity ("IMSI")

8  number 334020390173102 (the "Account"), including subscriber information, telephone

9  toll data and cell-site geo-location information for the period of October 9, 2018 up to and

10 including January 9, 2019. As set forth below, probable cause exists to believe the Account

11 contains evidence of violations of federal law, namely, importation of controlled

12 substances and conspiracy to import controlled substances, in violation of 21 U.S.C. §§

13 952, 960 and 963.

14     2.    The data associated with the Account is currently in the possession of T-

15 Mobile, headquartered at 4 Sylvan Way, Parsippany, New Jersey 07504.  This affidavit is

16 made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to

17 require T-Mobile to disclose to the government copies of the information further described

18 in Section I of Attachment B.  Upon receipt of the information described in Section I of

19 Attachment B, government-authorized persons will review the information to locate items

20 described in Section II of Attachment B.  This Court has jurisdiction to issue this warrant

21 because it is "a district court of the United States (including a magistrate judge of such a

22 court)" that "has jurisdiction over the offense being investigated." 18 U.S.C.

23 §§ 2703(c)(1)(A), 2711(3)(A).

24                    **TRAINING AND EXPERIENCE**

25     3.    I am a Special Agent with the United States Department of Homeland

26 Security, Immigration and Customs Enforcement, Homeland Security Investigations

27 ("HSI"). I am currently assigned to the Computer Forensics Group.  I have held my current

28

1  position with HSI since January 2007. Previously, I was assigned to various HSI (and U.S.
2  Customs) San Ysidro Narcotics Groups.

3       4.      Prior to becoming an HSI Special Agent, I was employed as a private sector
4  software engineer from 1992 to July 2002.

5       5.      I am a graduate of the Federal Law Enforcement Training Center, Criminal
6  Investigator Training Program and the United States Customs Service Academy, Basic
7  Enforcement School.  During these courses, I was trained in various types of criminal
8  investigations, including investigations involving the illegal trafficking of narcotics,
9  currency, and contraband.

10      6.      I am a federal law enforcement officer within the meaning of Rule 41(a)(2)(C)
11 of the Federal Rules of Criminal Procedure.  I am authorized under Rule 41(a) to make
12 applications for search and seizure warrants and to serve arrest warrants.  I am authorized
13 to investigate violations of laws of the United States and to execute warrants issued under
14 the authority of the United States.

15      7.      My training and experience in narcotics enforcement has included narcotics
16 interdiction, the identification of different types of narcotics, including methamphetamine,
17 and the investigation of persons in possession of narcotics for purposes of sales and
18 transportation.  In addition, I speak with other narcotics investigators regarding the manner
19 in which sellers of narcotics store, transport and sell narcotics.  I also regularly extract and
20 analyze mobile devices and other digital evidence associated with narcotic investigations.

21      8.      In the course of my duties, I have been a case agent directing drug-related
22 investigations. I have participated in many aspects of criminal investigations including
23 reviewing evidence, conducting physical and electronic surveillance, and executing search
24 and arrest warrants. I have interviewed defendants and witnesses while conducting various
25 investigations. I have gained a working knowledge and insight into the normal operational
26 habits of narcotics traffickers, with particular emphasis on those who attempt to import
27 narcotics into the United States from Mexico at the San Diego international ports of entry.

28

9.      The following is based on my own investigation, oral and written reports by other law enforcement officers, interviews, subpoenaed and public records, database checks, and other investigations. Since this affidavit is for a limited purpose, I have not included every fact I know about this investigation. I set forth only facts necessary to establish foundation for the requested search warrant application. Conversations and discussions below are set forth in substance unless noted.

## FACTS IN SUPPORT OF PROBABLE CAUSE

10.     On January 9, 2019, at approximately 0851 hours, Engelber MARTINEZ-Avila ("MARTINEZ") applied for admission into the United States at the Otay Mesa, California, Port of Entry, as the driver and sole occupant of a 2008 Toyota Sienna, bearing Mexico license plates (the "Vehicle"). The Otay Mesa Port of Entry is located within the Southern District of California.

11.     Customs and Border Protection Officer (CBPO) S. Andaluz conducted the preprimary inspection of MARTINEZ with the assistance of a Human/Narcotics Detector Dog (HNDD). The HNDD alerted to the gas tank area of the Toyota Sienna that was driven by MARTINEZ.   CBPO A. Spinoccia continued the preprimary inspection of MARTINEZ' vehicle, tapped the gas tank, and noted the gas tank was very solid.  When asked by CBPO Spinoccia, MARTINEZ stated he was going to the Home Depot on Palm Avenue in San Diego and gave two negative declarations.  CBPO Spinoccia referred the vehicle for a Z-portal inspection.

12.     CBPO F. Ramos conducted a Z-portal scan of the Toyota Sienna and observed anomalies within the doors, quarter panels, and rear bumper area of the vehicle.  CBPO Ramos referred the vehicle for a secondary inspection.

13.     CBPO R. Lopez conducted the secondary inspection of the Toyota Sienna. During the secondary inspection, CBPO Lopez noticed the gas tank tapped solid and observed the fuel gauge was marked full.  Nine gallons of fuel were removed from the gas tank. CBPO Lopez extracted a total of 91 packages from within the vehicle. Packages were found in the vehicle's rear bumper, driver side rear quarter panel, passenger side rear

3

1 | quarter panel, passenger side sliding door, driver front door, passenger front door, driver
2 | rear seat, passenger side rear seat, and gas tank.

3 |    14. Packages were randomly selected and the contents field-tested positive for the
4 | properties of fentanyl, heroin, methamphetamine, or acetaminophen. In total, the packages
5 | contained approximately 2.5 kilograms of fentanyl, 2.52 kilograms of heroin, 54.66
6 | kilograms of methamphetamine, and 1.92 kilograms of acetaminophen. After field-testing
7 | these packages, Officer Lopez placed MARTINEZ under arrest.

8 |    15. After being placed under arrest, MARTINEZ received his *Miranda* rights at
9 | approximately 1137 hours and requested an attorney. MARTINEZ' cellular phone was
10 | detained during the process of searching the Vehicle and placing MARTINEZ under arrest.

11 |    16. I forensically extracted and reviewed the contents of MARTINEZ' phone
12 | under HSI Electronic Border Search authority. Among other items, the phone contained
13 | pictures of MARTINEZ and text-based communications, tending to demonstrate the phone
14 | was used up until the day of arrest. Information extracted from the phone's SIM card
15 | indicated the last recorded cell tower connection was to a tower with a Mobile Country
16 | Code of 310, a Mobile Network Code of 260, and a TMSI "337CFF42". This indicated
17 | the cell tower was part of the T-Mobile cellular network. The phone's SIM card contained
18 | an IMSI number of "334020390173102", which indicated the home network for the SIM
19 | card was the "Telcel" cellular network. The phone number is 52-664-364-7734. The
20 | Account information being sought by this application is for the phone seized from
21 | MARTINEZ.

22 |    17. I have also reviewed information about MARTINEZ' border-crossing
23 | activity. The information indicated the Vehicle crossed the border between the United
24 | States and Mexico, at a Port of Entry, 21 times between September 17, 2018, and January
25 | 9, 2019, with 11 crossings at the Otay Mesa Port of Entry and 10 crossings at the San
26 | Ysidro Port of Entry.

27 |    18. Based upon my experience investigating drug smuggling, my training, and my
28 | consultation with other investigators who have experience investigating drug smuggling

4

1  near the border, I understand drug smugglers will seek to smuggle drugs from Mexico to

2  the United States by hiding the drugs in hidden compartments of vehicles, and in non-

3  factory compartments (*i.e.*, compartments that the manufacturer did not design for ordinary

4  use). Smugglers will then drive north from Mexico and seek to pass through POEs with the

5  drugs undetected.  I am also aware that such individuals will sometimes try to generate a

6  history of crossings to show that driving through a POE is ordinary behavior for them.

7  When they arrive in the United States, smugglers will take the drugs to a discreet location

8  to transfer them to other people involved in the distribution chain, who can then send the

9  drugs to other locations for downstream distribution.

10       19.     Based upon my training and experience as a Special Agent, and consultations

11  with law enforcement officers experienced in narcotics trafficking investigations, and all

12  the facts and opinions set forth in this affidavit, I further submit the following:

13       a. Drug smugglers use cellular telephones because the devices are mobile

14          and provide instant access to telephone calls, texts, internet, application-

15          based communications platforms (*e.g.*, WhatsApp), and voice messages;

16       b. Drug smugglers use cellular telephones because they are able to actively

17          monitor the progress of the illegal cargo while the conveyance is in transit;

18       c. Drug smugglers and their accomplices use cellular telephones because the

19          phones help them arrange for the delivery of cargo at predetermined locations

20          and monitor / plan for arrival times;

21       d. Drug smugglers use cellular telephones to direct couriers to synchronize drop

22          off and pick up times of the illegal cargo;

23       e. Drug smugglers use cellular telephones to notify or warn accomplices about

24          law-enforcement activity, such as the presence and posture of marked and

25          perceived unmarked patrol vehicles, or the operational status of border

26          checkpoints and border crossings;

27       f. The use of cellular telephones by smugglers tends to generate evidence stored

28          on the cellular telephones, including but not limited to emails, text messages,

5

1   application-based communications, photographs, audio files, call logs,

2   address book entries, IP addresses, social network data, and location data; and

3   g. Subscriber Identity Module (SIM) Cards, also known as subscriber identity

4   modules, are smart cards that store data for cellular telephone subscribers.

5   Such data includes user identity, location and phone number, network

6   authorization data, personal security keys, contact lists and stored text

7   messages. Much of the evidence generated by a smuggler's use of a cellular

8   telephone would likely be stored on any SIM Card that has been utilized in

9   connection with that telephone.

10   20.   Given the facts surrounding MARTINEZ' arrest, my review of MARTINEZ'

11   border-crossing activity during the three months prior to his arrest, and based upon my

12   experience and training, as well as consultation with other law enforcement officers

13   experienced in drug smuggling investigations, I submit there is probable cause to believe

14   MARTINEZ used the phone associated with the Account, and information relevant to the

15   smuggling activities of MARTINEZ will be found in a review of the Account. Based on

16   the foregoing and in light of my training and experience, I further submit there is probable

17   cause to authorize a review of the Account for three months prior to MARTINEZ' arrest,

18   *i.e.*, from October 9, 2018 up to and including January 9, 2019.

19   21.   In my training and experience, I have learned T-Mobile is a company that

20   provides cellular telephone access to the general public. I also know that providers of

21   cellular telephone service have technical capabilities that allow them to collect and

22   generate information about the locations of the cellular telephones to which they provide

23   service, including Cell Site Location Information (CSLI), also known as "tower/face

24   information" or "cell tower/sector records." CSLI data identifies the "cell towers" (i.e.,

25   antenna towers covering specific geographic areas) that received a radio signal from the

26   cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the

27   telephone connected. These towers are often a half-mile or more apart, even in urban areas,

28   and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a

6

1  wireless device does not necessarily serve every call made to or from that device.

2  Accordingly, CSLI data provides an approximate location of the cellular telephone but is

3  typically less precise than other types of location information, such as E-911 Phase II data

4  or Global Positioning Device ("GPS") data.

5       22.    I also know from my training and experience that Mobile Network Operators

6  (MNO's) commonly collect and store historical precision location information that may

7  provide historical geographic location of a user's mobile device. This data may provide an

8  estimate of the user's mobile device locations. This technology is MNO specific and may

9  be referred to as Round Trip Tool/Time (RTT), Per Call Measurement Data (PCMD),

10  Network Event Location System (NELOS), TDOA or Timing Advance Information

11  (TrueCall), and Activity Log.

12       23.    Based on my training and experience, I know T-Mobile can collect CSLI data

13  about phones, including information constituting the Account.  I also know that wireless

14  providers such as T-Mobile typically collect and retain CSLI data pertaining to cellular

15  phones to which they provide service in their normal course of business, including roaming

16  phones from other carriers that connect to the T-Mobile network, in order to use this

17  information for various business-related purposes.

18       24.    Based on my training and experience, I know wireless providers such as T-

19  Mobile typically collect and retain information about their subscribers and network users

20  in their normal course of business. This information can include basic personal information

21  about the subscriber, such as name and address, and the methods of payment (such as credit

22  card account number) provided by the subscriber to pay for wireless telephone service.  I

23  also know that wireless providers such as T-Mobile typically collect and retain information

24  about a phone's use of the wireless service, such as records about calls or other

25  communications sent or received by a particular phone and other transactional records, in

26  their normal course of business.  In my training and experience, this information may

27  constitute evidence of the crimes under investigation because the information can be used

28

1  to identify the user or users of the phone associated with the Account and may assist in the

2  identification of co-conspirators.

3                                       **CONCLUSION**

4      25.    Based on the foregoing, I request that the Court issue the proposed search

5  warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

6      26.    Based upon my training and experience, consultation with other law

7  enforcement officers experienced in narcotics investigations, and all the facts and opinions

8  set forth in this Affidavit, there is probable cause to believe that the Account to be seized,

9  as set forth above and in Section I of Attachment B, will be found in the location described

10 in Attachment A, and will contain evidence of violations of 21 U.S.C. §§ 952 and 960.

11 Therefore, I respectfully request that the Court issue a warrant authorizing me, or another

12 federal law enforcement agent, to order T-Mobile to search its corporate records for the

13 Account and to order T-Mobile to deliver the Account listed in Section I of Attachment B.

14

15  _____
    David Marshall, Special Agent
16  Homeland Security Investigations

17  Subscribed and sworn to before me
18  this ___/4__ day of May, 2019.

19

20  _____
    Hon. Michael S. Berg
21  United States Magistrate Judge

22

23

24

25

26

27

28

8